# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| HEWLETT PACKARD ENTERPRISE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>INTELLECTUAL VENTURES I LLC and XENOGENIC DEVELOPMENT LIMITED LIABILITY COMPANY,<br><br>    Defendants. | C.A. No. 22-cv-730-VAC-CJB |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Dated: August 8, 2022

Of Counsel:

Matthew D. Vella
mvella@princelobel.com
Robert R. Gilman
rgilman@princelobel.com
Jonathan DeBlois
jdeblois@princelobel.com
Aaron Jacobs
ajacobs@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
Tel: (617) 456-8000

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Str., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*COUNSEL for DEFENDANTS*

TABLE OF CONTENTS

I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS ................... 1

II.   SUMMARY OF THE ARGUMENT ................................................................................ 1

III.  INTRODUCTION .............................................................................................................. 1

IV.   STATEMENT OF FACTS ................................................................................................. 2

V.    LEGAL STANDARDS ...................................................................................................... 3

      A.   A court must dismiss a case where it lacks subject matter jurisdiction. ................. 3

      B.   A declaratory judgment actions must be dismissed where it does not show a substantial controversy ............................................................................................ 4

      C.   District courts have broad discretion to refuse to entertain a declaratory judgment action even if there is jurisdiction. ......................................................................... 5

VI.   ARGUMENT ...................................................................................................................... 6

      A.   There is no actual controversy between the parties. ............................................... 6

      B.   Even if there is an actual controversy, the Court should exercise its discretion to decline jurisdiction. ............................................................................................... 10

VII.  CONCLUSION ................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*3M Co. v. Avery Dennison Corp.*,
   673 F.3d 1372 (Fed. Cir. 2012) ................................................................................................ 5

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
   569 U.S. 576 (2013) ................................................................................................................. 4

*Ass'n for Molecular Pathology v. U.S. Pat. & Trademark Off.*,
   689 F.3d 1303 (Fed. Cir. 2012) ............................................................................................. 4, 5

*Cepheid v. Roche Molecular Sys., Inc.*,
   No. C-12-4411 EMC,
   2013 WL 184125 (N.D. Cal. Jan.17, 2013) .............................................................................. 9

*Commc'ns Test Design, Inc. v. Contee, LLC*,
   952 F.3d 1356 (Fed. Cir. 2020) ................................................................................................ 6

*DeCurtis LLC v. Carnival Corp.*,
   No. 20-22945-CIV,
   2021 WL 7539904 (S.D. Fla. Feb. 9, 2021) ............................................................................. 9

*EMC Corp. v. Norand Corp.*,
   89 F.3d 807 (Fed. Cir. 1996) ..................................................................................... 6, 9, 10, 11

*GoDaddy.com, LLC v. RPost Commc'ns Ltd.*,
   No. CV-14-00126-PHX-JAT,
   2014 WL 6908520 (D. Ariz. Dec. 9, 2014) .................................................................. 5, 7, 8, 9

*Gould Elecs. Inc. v. U.S.*,
   220 F.3d 169 (3d Cir. 2000) .................................................................................................. 3, 4

*Hewlett-Packard Co. v. Acceleron LLC*,
   587 F.3d 1358 (Fed. Cir. 2009) ............................................................................................. 4, 5

*In re Qualcomm Litig.*,
   No. 17-cv-00108-GPC-MMD,
   2017 WL 5985598 (S.D. Cal. Nov. 8, 2017) ............................................................................ 9

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) .............................................................................................................. 4, 5

*Prasco, LLC v. Medicis Pharm. Corp.*,
   537 F.3d 1329 (Fed. Cir. 2008) ................................................................................................ 4

*Samsung Elecs. Co. v. Netlist, Inc.*,
   No. CV 21-1453-RGA,
   2022 WL 3027312 (D. Del. Aug. 1, 2022) ............................................................................... 6

*Samsung Elecs. Co. v. Texas Instruments, Inc.*,
   No. 3:96-cv-1,
   1996 WL 343330 (N.D. Tex. Apr. 18, 1996) ......................................................................... 10

*SanDisk Corp. v. STMicroelectronics, Inc.*,
   480 F.3d 1372 (Fed. Cir. 2007) ................................................................................................ 5

*Serco Servs. Co., L.P. v. Kelley Co., Inc.*,
  51 F.3d 1037 (Fed. Cir. 1995) .............................................................................................. 10

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995) ............................................................................................................... 6

**Rules**

Fed. R. Civ. P. 12(b)(1) .................................................................................................................. 3

Fed. R. Civ. P. 8(a)(2) .................................................................................................................... 3

Defendants Intellectual Ventures I LLC ("IV") and Xenogenic Development Limited Liability Company (collectively "defendants") hereby move to dismiss plaintiff Hewlett Packard Enterprises' ("HPE") declaratory judgment complaint for lack of subject matter jurisdiction.

### I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff filed the Complaint in this case on June 2, 2022, alleging non-infringement of U.S. Patent Nos. 7,929,504; 7,246,173; 7,505,751; 7,684,318; and 7,386,036.  *See* D.I. No. 2 at ¶¶ 27-32; 34-38; 40-44; 46-50; 52-56 (collectively "the DJ Patents").  Defendants file this Motion to dismiss prior to filing their answer and counterclaims, and it is timely.  *See* Fed. R. Civ. P. 12(a).

### II.   SUMMARY OF THE ARGUMENT

1.    Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction because the Complaint facially fails to establish that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

2.    In the alternative, the Court should decline to exercise its declaratory judgment jurisdiction because allowing declaratory judgment actions to go forward on facts such as these would discourage licensing negotiations and encourage litigation while allowing HPE to use this action to attempt to gain an upper hand in licensing negotiations.

### III.  INTRODUCTION

There is no justiciable controversy in this case.  And, even if there were one, the Court should exercise its discretion and decline to extend it.  Even taking all the facts alleged by HPE as true in its Complaint, allowing this case to move forward on the thin factual basis presented by HPE regarding the patents-in-suit would chill licensing negotiations and motivate litigation.

The Complaint seeks a declaration that the five DJ Patents owned by the defendants are not infringed. The only allegations concerning these patents show that defendants have never specifically accused plaintiff of infringement. Rather, these five patents were in a presentation made for the purposes of attempting to negotiate a license to end the dispute between the parties. They were a small subset of *more than eighty* patents on a slide characterized as "Current Picture – Patents Relevant to HPE." *See* D.I. No. 2, Ex. 7 at 12. They were an even smaller subset of the *more than three-hundred* patents on the subsequent slide entitled "HPE can benefit from a portfolio-wide license." *Id.* at 14. HPE's cherry-picking aside, the defendants have not once presented even a single claim chart to HPE regarding the DJ Patents, let alone made a direct accusation of infringement.

In short, HPE seeks to shoehorn the Court into helping HPE engage in negotiations by other means. As such, the defendants submit that the Court should exercise its discretion and dismiss the case.

## IV.  STATEMENT OF FACTS

Across fifty-six paragraphs and twelve pages, plaintiff points to only a single instance where defendants even mentioned the DJ Patents to HPE. In particular, plaintiff received a presentation from defendants that listed the DJ patents—undifferentiated among more than thirty others—as "Patents Relevant to HPE" with respect to its Intelligent Edge platform. *See* D.I. No. 2 ¶ 21 & Ex. 7 at 12. The slide in question also identified another fifty-five patents that may be "relevant" to plaintiff in other areas. *See* D.I. No. 2, Ex. 7 at 12. A subsequent slide identifies more than three-hundred patents that "HPE can benefit from." *Id.* at 14. And, as HPE also notes, IV is the assignee of more than 35,000 "assets." *See* D.I. No. 2 ¶ 13. Yet, HPE brought suit on just the five DJ Patents.

Plaintiff's Complaint goes on to note that the same presentation states that "[a]ll major HPE products and services shall soon stand accused under IV patents" and that "[a]lready accused products and services shall soon stand accused under more IV patents" along with alleging a phone call repeating the same message. *Id.* ¶ 25. But nowhere in the Complaint does plaintiff allege defendants accused it of infringing any of the more-than-three-hundred patents in the presentation, let alone the five DJ Patents.

Plaintiff's allegations concerning subject matter jurisdiction also include general allegations about the prior litigation history between plaintiffs and IV. The Complaint describes three lawsuits filed against plaintiff by defendants alleging infringement of twelve different patents and the fact that defendants sent demand letters on the eve of each lawsuit. *See* D.I. No. 2 ¶¶ 15-19. The cases were filed on March 9, 2021; June 11, 2021; and December 15, 2021. *Id.* ¶¶ 16-18. These lawsuits were preceded by and in parallel with licensing communications between plaintiff and defendants. *Id.* ¶ 14. The DJ Patents are not asserted in those cases, nor has IV asked to amend any of its complaints to add them.

## V. LEGAL STANDARDS

### A. A court must dismiss a case where it lacks subject matter jurisdiction.

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court may dismiss a case where it lacks subject matter jurisdiction. "A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs. Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000). The present motion is a facial attack because it focuses on allegations in HPE's Complaint and why those allegations do not give rise to subject matter jurisdiction. "In reviewing a facial attack, the court must only

3

consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.*

### B. A declaratory judgment actions must be dismissed where it does not show a substantial controversy.

"A court has subject matter jurisdiction under the Declaratory Judgment Act only if 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1361 (Fed. Cir. 2009) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)); *see also Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008) (recognizing that a case or controversy must be "based on a real and immediate injury or threat of future injury that is caused by the defendants—an objective standard that cannot be met by a purely subjective or speculative fear of future harm.") (emphasis omitted).

Federal Circuit law governs whether an actual case or controversy exists in an action for declaratory adjudication in patent matters. *See Ass'n for Molecular Pathology v. U.S. Pat. & Trademark Off.*, 689 F.3d 1303, 1318 (Fed. Cir. 2012), *aff'd in part and rev'd in part on unrelated grounds sub nom.*, *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576 (2013). The Federal Circuit has explained that a "patentee can cause . . . an injury [sufficient to create an actual controversy] in a variety of ways, for example, by creating a reasonable apprehension of an infringement suit, [or] demanding the right to royalty payments." *Prasco*, 537 F.3d at 1339 (citations omitted). However, the "totality of the circumstances" must be considered. *Id.* at 1338-1339. "[D]eclaratory judgment jurisdiction will not arise merely on the basis that a party learns of the existence of an adversely held patent, or even perceives that such a patent poses a risk of infringement, in the absence of some affirmative act by the patentee."

4

*Ass'n for Molecular Pathology*, 689 F.3d at 1319-1320 (*citing SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380-81 (Fed. Cir. 2007)). In short, tangible injury, or the imminent threat thereof, is necessary for standing. *Id.* at 1318-1320.

Of course, "a communication from a patent owner to another party, merely identifying its patent and the other party's product line, without more, cannot establish adverse legal interests between the parties, let alone the existence of a 'concrete and definite' dispute. More is required to establish declaratory judgment jurisdiction." *Hewlett-Packard*, 587 F.3d at 1362. Just how much more is determined on a case-by-case analysis. *See 3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1379 (Fed. Cir. 2012). "Following *MedImmune*, [the Federal Circuit] ha[s] held that to establish an injury in fact traceable to the patentee[,] a declaratory judgment plaintiff must allege an affirmative act by the patentee relating to the enforcement of his patent rights." *3M*, 673 F.3d at 1377 (citing *SanDisk*, 480 F.3d at 1380-81).

"Simply listing a patent among numerous other patents in pre-suit communications from a patent owner to a potential infringer is insufficient to establish a justiciable controversy." *GoDaddy.com, LLC v. RPost Commc'ns Ltd.*, No. CV-14-00126-PHX-JAT, 2014 WL 6908520, at *4 (D. Ariz. Dec. 9, 2014); *see*, *e.g.*, *id.* at *5 ("[T]he RMail Patents [GoDaddy sued on] are listed along with numerous other RPost patents, both foreign and domestic, in the Email and the Letter with no specific attention drawn to them. . . . [W]ithout more than the lists of patents in the Email and Letter, there is no justiciable controversy regarding either of the RMail Patents.").

    **C.**    **District courts have broad discretion to refuse to entertain a declaratory judgment action even if there is jurisdiction.**

Finally, even where a court concludes that there is a (theoretical) case or controversy under 28 U.S.C. § 2201(a), it may decline to hear the matter in the interests of "practicality and wise judicial administration" or for other "well-founded reasons." *Wilton v. Seven Falls Co.*, 515

U.S. 277, 288 (1995); *see also, e.g.*, *Commc'ns Test Design, Inc. v. Contee, LLC*, 952 F.3d 1356, 1361-62 (Fed. Cir. 2020) ("As long as the district court acts in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial administration, it has broad discretion to refuse to entertain a declaratory judgment action.") (cleaned up); *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813 (Fed. Cir. 1996) ("Simply because there is an actual controversy between the parties does not mean that the district court is required to exercise that jurisdiction. The Act states that a court *may* grant declaratory relief.") (emphasis in original). For example, just last week this Court declined to exercise declaratory judgment jurisdiction over patents involved in litigation in other courts, even though this Court agreed that it could exercise jurisdiction. *See Samsung Elecs. Co. v. Netlist, Inc.*, No. CV 21-1453-RGA, 2022 WL 3027312, at *3-*4 (D. Del. Aug. 1, 2022).

## VI. ARGUMENT

### A. There is no actual controversy between the parties.

For all the chaff in HPE's Complaint, there is no wheat, no substance. HPE alleges that IV is the assignee of some 35,000 "assets." Of those, more than three-hundred patents were identified in the April 2022 presentation. Of those over three-hundred patents, over eighty were listed on the specific slide to which HPE points. Of those more than eighty patents, thirty-seven were identified as "[p]atents relevant to" HPE's Intelligent Edge. D.I. No. 2, Ex. 7 at 12. From those "relevant to" HPE's Intelligent Edge, HPE plucked out the five DJ Patents, apparently at random.

There are no claim charts for the DJ Patents. For that matter, there were no claim charts for any of the other more than three-hundred patents listed. Neither are there any alleged

6

correspondence, communications, presentations, or *anything* singling out the DJ Patents sufficient to raise an actual controversy.

The *GoDaddy* case, cited above, is an excellent example of why the instant case should be dismissed. As that court explained, RPost first emailed GoDaddy on July 17, 2013 ("the Email"), to advise GoDaddy that RPost believed GoDaddy was infringing a number of RPost's patents, including five specifically enumerated "Tomkow Patents." The Email also advised GoDaddy to review another seventeen listed patents, but without drawing particular attention to any one of them. *See GoDaddy*, 2014 WL 6908520 at *1. RPost followed up with an October 4, 2013 letter ("the Letter") that included claim charts for the Tomkow Patents. The Letter also stated that "[i]t is likely that [GoDaddy's] products and services are infringing other claims of RPost's patents," and provided a comprehensive list of patents owned by RPost. *Id.* But again, no attention was drawn to any specific patent beyond the Tomkow Patents.

On October 23, 2013, representatives of the parties spoke by phone. The RPost representative accused GoDaddy of infringing RPost's patents and "brought up RPost's past litigation, indicating that RPost is not afraid to litigate in order to enforce its patents." *Id.* at *2. But yet again, no specific patents were discussed.

Finally, on November 19, 2013, RPost sent a PowerPoint presentation to GoDaddy ("the Presentation"). The cover page of the presentation included a heading entitled "Patents & Claims in Analysis," under which four of the Tomkow Patents were listed. Another heading entitled "Additional Recommended Review" listed another Tomkow Patent, along with the '219 patent and three others. *Id.* This proved to be important.

Two months later, GoDaddy filed a declaratory judgment action against RPost, seeking declarations of invalidity and noninfringement of the Tomkow Patents. GoDaddy then amended

7

its complaint to add the '219 patent and the '334 patent (collectively "the RMail Patents"). The *GoDaddy* court's considered and distinct treatment of the later added RMail Patents is illuminating:

> In the case at hand, the RMail Patents are listed along with numerous other RPost patents, both foreign and domestic, in the Email and the Letter with no specific attention drawn to them. RPost suggested in the Email that GoDaddy "review the RPost patents noted below [in the list] for a more complete description of RPost patented technologies and review [them] in context of [GoDaddy's] technology operations considering suggestions noted above." Similarly, RPost provided claim charts for the Tomkow Patents in the Letter and asserted that "it is likely that [GoDaddy's] products and services are infringing other claims of RPost's patents." RPost directed GoDaddy to a link of all of RPost's patents to review, and again there was no particular attention drawn to the RMail Patents. Therefore, without more than the lists of patents in the Email and Letter, there is no justiciable controversy regarding either of the RMail Patents.

*Id.* at *5 (citations omitted). This description, up through the point at which RPost sent the Email and the Letter, parallels the situation at hand: The DJ Patents in this case were simply "listed along with numerous other [IV] patents, both foreign and domestic, . . . with no specific attention drawn to them." *Id.* RPost, as the defendants here, provided no infringement charts, and so "there is no justiciable controversy."

At this point, the facts of that case and this one diverge, for RPost—unlike IV—did more with respect to one of the two RMail Patents:

> In the Presentation entitled "Summary of Preliminary Infringement Analysis," however, RPost conspicuously listed one of the RMail Patents, the '219 patent, as one of five patents for "Additional Recommended Review" on the title slide. RPost also listed one of the Tomkow Patents . . . in the list for "Additional Recommended Review." RPost had explicitly asserted the Tomkow Patents by providing claim charts for them to GoDaddy. Therefore, listing the '219 patent alongside one of the Tomkow Patents reasonably indicates to GoDaddy that RPost also intended to assert the '219 patent.

*Id.* (citations omitted). Conversely, "RPost never made an affirmative act to specifically assert the '334 patent, but only listed it among numerous other patents in the communications to

8

GoDaddy . . . ." *Id.* at *6. Based upon this distinction, the *GoDaddy* court found that there was a justiciable controversy between RPost and GoDaddy as to the '219 patent, but *not* the '334 patent. *Id.* at *7-*8.

So, when RPost merely listed the RMail Patents in the Email and Letter as those that might interest GoDaddy—without calling specific attention to them—there was no justiciable controversy. That is parallel to the situation at hand. IV merely listed the DJ Patents as five among thirty-seven "relevant to" one of HPE's systems, and among more than three-hundred of possible interest to HPE.

Had RPost's communications ended with the Email and Letter, there would have been no declaratory judgment jurisdiction at all for the RMail Patents. For, it was only when RPost called out the '219 patent on the title page, listing it with four of the Tomkow patents that had been specifically charted for GoDaddy, that RPost crossed the line. At that point, declaratory judgment jurisdiction existed for the '219 patent, but not the '334 patent. And, this is a line that IV has *not* crossed with *any* of the DJ Patents. *See also, e.g.*, *DeCurtis LLC v. Carnival Corp.*, No. 20-22945-CIV, 2021 WL 7539904, at *9 (S.D. Fla. Feb. 9, 2021) (recognizing that a declaratory judgment plaintiff "cannot create blanket declaratory judgment jurisdiction with communications that do nothing more than list patents"); *In re Qualcomm Litig.*, No. 17-cv-00108-GPC-MMD, 2017 WL 5985598, at *16, *18-*19 (S.D. Cal. Nov. 8, 2017) (finding no jurisdiction over "Additional Patents-in-Suit" because they were simply listed with other patents and there were no claim charts for them); *Cepheid v. Roche Molecular Sys., Inc.*, No. C-12-4411 EMC, 2013 WL 184125, at *10 (N.D. Cal. Jan.17, 2013) (noting that presentations listing "numerous other patents held by [declaratory judgment] Defendant" did not create a justiciable controversy regarding one of them); *Samsung Elecs. Co. v. Texas Instruments, Inc.*, No. 3:96-cv-

9

1, 1996 WL 343330 (N.D. Tex. Apr. 18, 1996) (dismissing claims where general representations during licensing negotiations concerning a portfolio of nearly 4,000 patents were made for "posturing" and "persuasion and strategy during the extended [ ] licensing negotiations").

For these reasons, there is no justiciable controversy regarding the DJ Patents, and the case should be dismissed.

### B. Even if there is an actual controversy, the Court should exercise its discretion to decline jurisdiction.

Even if the Court concludes that it has jurisdiction over the DJ Patents, it should exercise its discretion by declining to take the case. The Court has "broad discretion" to decline declaratory-judgment jurisdiction, "as long as the district court acts in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial administration." *EMC*, 89 F.3d at 813-14. For example, the Federal Circuit has approved declining jurisdiction based on "a reasoned judgment whether the investment of time and resources will be worthwhile." *Serco Servs. Co., L.P. v. Kelley Co.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995). Likewise, a court may decline jurisdiction where a suit is a "tactical measure filed in order to improve [a party's] posture in . . . ongoing negotiations." *EMC*, 89 F.3d at 815.

Here, litigating the DJ Patents would serve little purpose beyond the disruption of business negotiations. If HPE clears the "substantial controversy" hurdle on these patents, it does so barely. The patents were not the focus of any of the parties' communications; instead, the parties were discussing patent licenses in broad strokes. The DJ Patents had never been substantively discussed, and certainly not *individually* discussed. Despite having the chance to do so, IV has not claimed infringement of these patents.

Set against this, litigating the DJ Patents' claims would require a significant "investment of time and resources" by the Court and parties. *Serco*, 51 F.3d at 1039. Indeed, as HPE noted,

10

one of the DJ Patents is already involved in several cases in Texas, and it would be a waste of judicial resources for the same patent to be litigated here as well.

Finally, allowing HPE to continue this case would promote bad policy. As the Federal Circuit noted in *EMC*, "a party in [HPE's] position could abuse the declaratory judgment device to obtain a more favorable bargaining position in its ongoing negotiations with the patentee and also to undermine the value of the patent so as to impede its sale or licensing to a third party." *EMC*, 89 F.3d at 814; *see also id*. ("[A] court may take into account the pendency of serious negotiations to sell or license a patent in determining to exercise jurisdiction over a declaratory judgment action."). In short, HPE should not be permitted to use this declaratory judgment action to lever itself into a better negotiating position.

## VII.  CONCLUSION

For the foregoing reasons, the defendants respectfully ask the Court to dismiss the Complaint.

| | |
|---|---|
| Dated: August 8, 2022 | Respectfully submitted, |
| | FARNAN LLP |
| Of Counsel: | |
| | /s/ Brian E. Farnan |
| Matthew D. Vella | Brian E. Farnan (Bar No. 4089) |
| mvella@princelobel.com | Michael J. Farnan (Bar No. 5165) |
| Robert R. Gilman | 919 N. Market Str., 12th Floor |
| rgilman@princelobel.com | Wilmington, DE 19801 |
| Jonathan DeBlois | Tel: (302) 777-0300 |
| jdeblois@princelobel.com | Fax: (302) 777-0301 |
| Aaron Jacobs | bfarnan@farnanlaw.com |
| ajacobs@princelobel.com | mfarnan@farnanlaw.com |
| PRINCE LOBEL TYE LLP | |
| One International Place, Suite 3700 | *COUNSEL for DEFENDANTS* |
| Boston, MA 02110 | |
| Tel: (617) 456-8000 | |