**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| HEWLETT PACKARD ENTERPRISE COMPANY, | **PUBLIC VERSION** |
| Plaintiff, | C.A. No. 22-730-VAC-CJB |
| v. | Redaction |
| INTELLECUTAL VENTURES I LLC and XENOGENIC DEVELOPMENT LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.   BACKGROUND ............................................................................................................. 2

III.  LEGAL STANDARDS .................................................................................................. 5

IV.  ARGUMENT .................................................................................................................. 8

     A.    Under The First Prong Of The Molecular Pathology Test, IV Affirmatively Acted To Enforce Its Patent Rights Against HPE. ........................ 8

           1.    IV Sued HPE For Patent Infringement Three Times Before HPE Filed This Declaratory Relief Action........................................................ 9

           2.    IV Promised To Continue Its Aggressive Litigation Campaign Against HPE And Identified Specific Patents "Relevant" To HPE Products.................................................................................................... 9

           3.    The April 2022 Presentation Implicates Products Already Accused Of Infringement By IV In Other Pending Lawsuits................................ 16

     B.    Under The Second Prong Of The Molecular Pathology Test, HPE's "Potentially Infringing" Products Are Already On The Market. ......................... 17

     C.    The Court Should Exercise Its Discretion To Retain Jurisdiction Under The Declaratory Judgment Act. ........................................................................ 18

V.   CONCLUSION............................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arkema, Inc. v. Honeywell Intern., Inc.*,
  706 F.3d 1351 (Fed. Cir. 2013)...................................................................................9, 16

*Arris Grp. Inc. v. Mobile Telecomms. Techs., LLC*,
  247 F. Supp. 3d 456 (D. Del. 2017).................................................................................7

*Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office*,
  689 F.3d 1303 (Fed. Cir. 2012), *aff'd in part and rev'd in part on unrelated
  grounds sub nom.*, *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
  569 U.S. 576 (2013)................................................................................6, 8, 17, 18

*Benitec Austl., Ltd. v. Nucleonics, Inc.*,
  495 F.3d 1340 (Fed. Cir. 2007)........................................................................................7

*Capo, Inc. v. Dioptics Med. Prods.*,
  387 F.3d 1352 (Fed. Cir. 2004)......................................................................................18

*Cat Tech LLC v. TubeMaster Inc.*,
  528 F.3d 871 (Fed. Cir. 2008)..............................................................................7, 17, 18

*Cepheid v. Roche Molecular Sys., Inc.*,
  No. C-12-4411 EMC, 2013 WL 184125 (N.D. Cal. Jan. 17, 2013) ......................................16

*DeCurtis LLC v. Carnival Corp.*,
  No. 20-22945-CIV, 2021 WL 7539904 (S.D. Fla. Feb. 9, 2021), *report and
  recommendation adopted as modified*, No. 20-21547-CIV, 2021 WL 1540518
  (S.D. Fla. Apr. 20, 2021) ................................................................................................16

*Draeger Med. Sys., Inc. v. My Health, Inc.*
  No. 15-248-SLR, 2016 WL 859282 (D. Del. Mar. 3, 2016) .................................................13

*Genentech, Inc. v. Eli Lilly & Co.*,
  998 F.2d 931 (Fed. Cir. 1993), *abrogated on other grounds by Wilton v. Seven
  Falls Co.*, 515 U.S. 277 (1995)..................................................................................6, 18

*GoDaddy v. RPost Commc'ns Ltd.*,
  No. CV-14-126, 2014 WL 6908520 (D. Ariz. Dec. 9, 2014), *aff'd*, 685 F.
  App'x 992 (Fed. Cir. 2017).................................................................................13, 14, 15

*Goodyear Tire Rubber v. Releasomers*,
  824 F.2d 953 (Fed. Cir. 1987).........................................................................................6, 7

ii

*Hewlett-Packard Co. v. Acceleron LLC*,
    587 F.3d 1358 (Fed. Cir. 2009)........................................................................................ *passim*

*Larson v. Valente*,
    456 U.S. 228 (1982)............................................................................................................15

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007)....................................................................................................5, 8, 13

*Microsoft Corp. v. SynKloud Techs.*,
    484 F. Supp. 3d 171 (D. Del. 2020)...............................................................................6, 9

*In re Qualcomm Litig.*,
    No. 17-cv-00108-GPC-MDD, 2017 WL 5985598 (S.D. Cal. Nov. 8, 2017) .........................16

*Samsung Elecs. Co. v. Texas Instruments Inc.*,
    No.3:96-cv-0001-P, 1996 WL 343330 (N.D. Tex. Apr. 18, 1996) .......................................16

*SanDisk Corp. v. STMicroelectronics, Inc.*,
    480 F.3d 1372 (Fed. Cir. 2007)...........................................................................................5

*Serco Servs. Co., L.P. v. Kelley Co.*,
    51 F.3d 1037 (Fed. Cir. 1995)...........................................................................................19

*TSMC Tech., Inc. v. Zond, LLC*,
    No. CV 14-721-LPS-CJB, 2015 WL 661364 (D. Del. Feb. 13, 2015)....................................8

**Other Authorities**

Rule 12(b)(1)........................................................................................................................7

Plaintiff Hewlett Packard Enterprise Company ("HPE") respectfully opposes the motion to dismiss (D.I. 18, 19) filed by Defendants Intellectual Ventures LLC ("IV") and Xenogenic Development LLC ("Xenogenic") (collectively "IV").

## I.    INTRODUCTION

This case is the fourth of five patent lawsuits between serial litigant IV and HPE. IV's motion omits the fact that in the 15 months before HPE filed its complaint in this Court, IV had already sued HPE three times. D.I. 2, ¶¶ 15-18. IV also omits the fact that it sued HPE again four weeks after HPE filed this declaratory judgment action, after IV threatened HPE on additional patents, including those asserted in this case. HPE and IV unquestionably have adverse legal interests, and a substantial, real, and immediate controversy about noninfringement exists for the Court to resolve.

When HPE filed this case on June 2, 2022, IV had asserted 12 patents against HPE in three lawsuits filed within a nine-month span in 2021. *See id.* In those lawsuits, IV accuses more than a dozen HPE product lines of infringement, including the same HPE Intelligent Edge Aruba products at issue in this case. *See id.* at ¶¶ 14-18. In April 2022, with the first three cases pending, IV threatened HPE with even more lawsuits, asserting that "[a]lready-accused products and services shall soon stand accused under more IV patents." *Id.*, Ex. 7 at 7. IV brandished more than 300 of its patents, isolated roughly 80 patents, and claimed that 37 of those patents allegedly were "relevant" to HPE's Intelligent Edge Aruba products. Among those 37 patents were three patents IV had already asserted against HPE and the five patents at issue in this case. *Id.*, Ex. 7 at 12, 14. On June 30, 2022, IV sued HPE again in Texas, claiming infringement of two more patents. *See* 6:22-cv-00703-ADA (W.D. Tex.). Under these circumstances, the Court plainly has jurisdiction to grant HPE declaratory relief on the DJ Patents.

## II.     BACKGROUND

HPE is a global edge-to-cloud company built to transform businesses by helping them connect, protect, analyze, and act on their data and applications globally.  *See* D.I. 2, ¶ 1. Throughout its history, HPE has invested in research and development to provide innovative products and solutions in the computing and web-based technology areas, including the technologies at issue in this action.  *Id.*  These products include HPE's Intelligent Edge offerings, such as Aruba wireless access points, Campus access points, Unified access points, gateways, controllers, and switches (the "Intelligent Edge Aruba products").  *Id.* ¶¶ 16, 22, 29, 35, 41, 47, 53; *see id.*, Ex. 7 at 7.

In contrast, IV's business model involves "identify[ing] and purchas[ing] patents representing key innovations" and leveraging those patents to extract licenses from companies in the affected industries.  *Id.*, Ex. 7 at 17; *id.*, ¶ 13.  IV claims that its patents have generated approximately "$1B …through litigation" (*id.*, Ex. 7 at 5), and "more than $2 billion in licensing revenue" (*id.*, ¶13, citation omitted).  Consistent with its litigious business model, IV sent HPE a presentation at the beginning of 2021, demanding that HPE pay for a license to IV's patent portfolio.  D.I. 2, ¶¶ 13-14, 25.  HPE declined that demand.

In March 2021, within two months of the 2021 presentation, IV filed its first lawsuit against HPE in the Western District of Texas, claiming infringement of seven patents by HPE products in the Intelligent Edge, Storage, Compute, and High-Performance Computing (HPC) & Artificial Intelligence (AI) business units.  *See id.*, ¶ 16.  Three months later, IV filed a second lawsuit against HPE in the same District, claiming infringement of four patents related to data processing and virtualization.  *Id.*, ¶ 17.  And in December 2021, IV filed its third lawsuit against HPE in the Western District of Texas, claiming infringement of one patent related to distributed

computing systems.  *Id.*, ¶ 18.  The table below summarizes the HPE products IV accuses of infringement in those three lawsuits (*see id.*, ¶ 16-18):

| HPE Business Unit | HPE Accused Products |
|---|---|
| Compute | ProLiant Servers; GreenLake for Private Cloud; Docker Enterprise Edition; Ezmeral Container Platform |
| HPC & AI | Apollo servers; HPC Performance Cluster; GreenLake for High Performance Computing |
| Storage | Primera Storage; 3PAR StoreServ; SimpliVity; GreenLake for Containers |
| Intelligent Edge Aruba | Aruba 7200 Series Mobility Controllers; Aruba 802.11ax Access Points; Aruba 530 Series Access Points; Aruba 550 Series Access Points; Aruba EdgeConnect Platform; Aruba OS; SilverPeak Unity EdgeConnect / SD-WAN Edge Platform |

In March 2022, IV threatened to sue HPE on even more patents in IV's portfolio.  *See* D.I. 2, ¶ 25.  IV followed up in April 2022 by sending another presentation to HPE reasserting its position that HPE's "core technologies … significantly overlap" with IV's patents.  *See id.*, ¶ 20; Ex. 7 at 15.  The April 2022 presentation begins by summarizing IV's revenue, activities, and the size of its patent portfolio, then states: "To date, of the 6,000 or so active assets sold, 615 assets have been litigated by both OpCos [(Operating Companies)] and PAEs [(Patent Assertion Entities)] against 1,100+ defendants across 1,300+ cases."  *Id.*, Ex. 7 at 4.

More to the point, IV's presentation claims that IV had filed "130+ cases to date, against 70+ companies," and it detailed where and against whom many of those cases were


Redaction

filed. *Id*., Ex. 7 at 5 (slide excerpt). IV then explicitly threatened more lawsuits against HPE,

claiming that "[a]lready-accused products and services shall soon stand accused under more IV

patents" and that "[a]ll
major HPE products and
services shall soon stand
accused under IV patents."
*Id.*, Ex. 7 at 7 (annotations
in original).



      IV also identified its

recent patent acquisitions that were purportedly "relevant to HPE," highlighting in green the

eleven patents that IV had already asserted against HPE:

*Id.*, Ex. 7 at 12 (annotations and highlights in original).

In the slide depicted above, the DJ Patents[1] are among 37 patents that IV identified as being "relevant" to HPE's Intelligent Edge Aruba products. *Id*. IV also claimed it "continued to mine the portfolio for relevant assets; HPE may infringe additional patents which span all segments incl. Compute, HPC, Storage and Edge Units." *Id*. (emphasis added). IV concluded by signaling its intent to continue suing HPE on the Aruba products at issue in this case, stating that it "continues mining and claim charting more assets with respect to 3PAR, Alletra, SimpliVity, Greenlake, iLO5 server management, Proliant, and Aruba offerings." *Id.*, Ex. 7 at 15 (emphasis added). Faced with a clear threat that IV would continue to sue HPE for patent infringement, including against the HPE Aruba products at issue in this case, HPE filed this action seeking declaratory relief on five of the 37 patents that IV threatened to assert—or already had asserted—against HPE's Aruba products.

## III.    LEGAL STANDARDS

"A court has subject matter jurisdiction under the Declaratory Judgment Act if 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1361 (Fed. Cir. 2009) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). "In patent cases, declaratory judgment jurisdiction exists 'where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license.'" *Id.* (quoting *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007).

---

[1]  The "DJ Patents" involved in this case are U.S. Patent Nos. 7,929,504 ("the '504 patent"); 7,246,173 ("the '173 patent"); 7,505,751 ("the '751 patent"); 7,684,318 ("the '318 patent"); and 7,386,036 ("the '036 patent).

"[T]he purpose of the Declaratory Judgment Act … in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." *Goodyear Tire Rubber v. Releasomers*, 824 F.2d 953, 956 (Fed. Cir. 1987). And when "there is an actual controversy and a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or insecurity, in the usual circumstance the declaratory action is not subject to dismissal." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

The Federal Circuit holds that in declaratory judgment actions for noninfringement, the plaintiff must show "(1) an affirmative act by the patentee related to the enforcement of his patent rights and (2) meaningful preparation to conduct potentially infringing activity." *Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office*, 689 F.3d 1303, 1318 (Fed. Cir. 2012) (internal citations omitted), a*ff'd in part and rev'd in part on unrelated grounds sub nom., Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576 (2013); *see also Microsoft Corp. v. SynKloud Techs.*, 484 F. Supp. 3d 171, 177 (D. Del. 2020) (adopting *Molecular Pathology* two-part test).

To satisfy the "affirmative act" prong of the test, courts look at several factors, including "prior litigious conduct," "a patentee's aggressive enforcement strategy, even in the absence of direct threats against the declaratory judgment plaintiff," and "the presence of any accusations of infringement or threats of suit, demands for royalty payments or a licensing agreement, the existence of a covenant not to sue, or actual economic injury." *Microsoft*, 484 F. Supp. 3d at 178 (internal citations and quotations omitted). "When the conduct of the patentee can be 'reasonably inferred as demonstrating intent to enforce a patent' against the declaratory judgment plaintiff, subject matter jurisdiction will arise, even when that intent is demonstrated

6

only implicitly." *Arris Grp. Inc. v. Mobile Telecomms. Techs., LLC,* 247 F. Supp. 3d 456, 460 (D. Del. 2017) (hereinafter, *"In re Mobile Telecomms. Techs."*) (citing *Hewlett-Packard Co.*, 587 F.3d at 1363); *see also Goodyear Tire Rubber v. Releasomers*, 824 F.2d 953, 956 (Fed. Cir. 1987) (requiring an "express threat of litigation … would utterly defeat the purpose of the Declaratory Judgment Act …").

The "meaningful preparation" prong of the test is satisfied when a party has already engaged in the actual manufacture or sale of a potentially infringing product or when the party has meaningfully prepared to produce a potentially infringing product. *Cat Tech LLC v. TubeMaster Inc.*, 528 F.3d 871, 881 (Fed. Cir. 2008) (citations omitted). Thus, courts will dismiss a request for declaratory relief under this prong only when the risk of potentially infringing activity is remote. *See id.* at 881-883 (collecting cases); *see also Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1346-50 (Fed. Cir. 2007) (affirming dismissal of declaratory judgment counterclaim where party would not seek regulatory approval for its new drug for another 5-7 years, "if ever").

Furthermore, a Rule 12(b)(1) motion like IV's that "focuses on the allegations in a [declaratory judgment plaintiff's complaint] and why those allegations assertedly do not give rise to subject matter jurisdiction" is a facial, rather than factual, attack on the pleading. *In re Mobile Telecomms. Techs.*, 247 F. Supp. 3d at 459 (citation omitted). "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff [here, HPE]." *Id.* (citation omitted). Because IV's motion makes a facial rather than factual challenge to the pleading, leave to amend also should be granted unless any amendment would be futile, which

IV does not attempt to show. *See, e.g.*, *TSMC Tech., Inc. v. Zond, LLC*, No. CV 14-721-LPS-CJB, 2015 WL 661364, at *8 (D. Del. Feb. 13, 2015) (citations omitted).

## IV.   ARGUMENT

The facts HPE alleges in its complaint demonstrate there is a "substantial controversy" between HPE and IV regarding HPE's right to continue selling the Intelligent Edge Aruba products without a license to the DJ Patents. *See MedImmune*, 549 U.S. at 127. Under the first prong of the *Molecular Pathology* test, the adversity arises from IV's affirmative acts in enforcing its patents against HPE in multiple lawsuits—including a fifth lawsuit that IV filed <u>after</u> HPE filed this action—and IV's threats of further lawsuits asserting the DJ Patents against HPE's Intelligent Edge Aruba products. Under the second prong of the *Molecular Pathology* test—which IV does not dispute—the parties' controversy is real and immediate, because HPE was selling the Intelligent Edge Aruba products long before it filed its complaint in this case. Finally, the Court's exercise of jurisdiction comports with the purposes of the Declaratory Judgment Act, and the circumstances do not justify a discretionary denial of jurisdiction.

### A.   Under The First Prong Of The *Molecular Pathology* Test, IV Affirmatively Acted To Enforce Its Patent Rights Against HPE.

The totality of the circumstances demonstrate that IV affirmatively acted in a manner related to enforcement of the DJ Patents against HPE's Intelligent Edge Aruba products, giving rise to an actual controversy between the parties. All of the following circumstances support that conclusion: (1) IV's pending litigation campaigns against HPE, including on the same HPE products at issue in this case; (2) IV's express and implied threats of future litigation against HPE's core products under dozens of specifically identified patents in IV's portfolio, including the DJ Patents; and (3) the overlap between IV's prior lawsuits against HPE on the one hand and IV's April 2022 presentation on the other.

1.    **IV Sued HPE For Patent Infringement Three Times Before HPE Filed This Declaratory Relief Action.**

IV's "prior litigious conduct" weighs heavily in favor of finding an actual controversy. *See Microsoft*, 484 F. Supp. 3d at 180.  Moreover, "[a] patentee's aggressive enforcement strategy" can give rise to subject matter jurisdiction "even in the absence of direct threats against the declaratory judgment plaintiff." *See id*.  Notably, IV sued HPE for patent infringement three times in the Western District of Texas in a nine-month span in 2021—in March 2021, June 2021, and December 2021.  D.I. 2, ¶¶ 15-18.  Those lawsuits span 12 asserted IV patents and at least five HPE product groups, including HPE's Intelligent Edge Aruba products.  *Id.*, ¶¶ 15-18, Ex. 7 at 7.  IV's decision to file three patent infringement lawsuits in quick succession after HPE declined to take a license to IV's portfolio is precisely the sort of behavior that creates an objectively higher risk of future litigation.  *Arkema, Inc. v. Honeywell Intern., Inc.*, 706 F.3d 1351, 1358 (Fed. Cir. 2013) (prior litigation was a "sufficient affirmative act on the part of the patentee for declaratory judgment purposes.").

2.    **IV Promised To Continue Its Aggressive Litigation Campaign Against HPE And Identified Specific Patents "Relevant" To HPE Products.**

IV's express and implied threats of litigation on numerous patents, including the DJ Patents, further demonstrate IV's affirmative acts of enforcement against HPE.  IV was not content to stop at three lawsuits, and it told HPE that both orally and in writing.  D.I. 2, ¶ 25; *see generally id.*, Ex. 7.  To dispel any doubt about IV's willingness to assert additional patents against HPE, IV notified HPE in March 2022 that IV would continue to sue HPE on other patents in IV's portfolio if HPE did not acquiesce to IV's license demands.  *See* D.I. 2, ¶ 25.

In April 2022, IV sent HPE an 18-page presentation describing IV's patent portfolio and HPE's need to take a license.  IV's April 2022 presentation does not mince words.  It states: "All major HPE products and services shall soon stand accused under IV patents."  *Id.*, Ex. 7 at 7.  It

further threatens that IV "continues mining and claim charting more assets with respect to [HPE's] 3PAR, Alletra, SimpliVity, Greenlake, iLO5 server management, ProLiant, <u>and Aruba offerings</u>." *Id.*, Ex. 7 at 15 (emphasis added). IV also explicitly referenced HPE's purported litigation risk, asserting that because of the "significant[] overlap" of HPE's "core technologies" with IV's patent portfolio, HPE's "exposed revenue" was allegedly more than one billion dollars. *Id.* IV also confirmed that HPE's already accused products would "<u>soon stand accused under more IV patents</u>." *Id.*, Ex. 7 at 7 (emphasis added).

As IV repeatedly points out in its motion, the April 2022 presentation identifies more than 300 patents in various portfolios held by IV. *See* D.I. 19 at 2, 3, 6, and 9. But IV ignores that its presentation did not stop there, but rather identified a targeted subset of 80 specific patents on a slide titled "Current Picture – Patents relevant to HPE":



D.I. 2, Ex. 7 at 12 (slide excerpt; highlighting in original). To be clear, the patents IV shaded in green are patents that IV had <u>already asserted</u> against HPE in three then-pending lawsuits; and

IV made clear its contention that all 80 patents were infringed by HPE's products.  In fact, at the bottom of the slide, IV added a note stating that "… HPE may infringe <u>additional patents</u> which span all segments incl[uding] Compute, HPC, Storage and Edge Units."  *Id.* (emphasis added). IV's reference to "additional patents" demonstrates that IV was contending that HPE infringed the 80 patents identified on slide 12.

IV further grouped the 80 patents by technology area and by HPE business unit; namely, Intelligent Edge (Aruba), Compute, Storage, HPC & MCS, and Services.  *Id.*  On the left side of Slide 12 (excerpt above), IV grouped 37 patents under the "Intelligent Edge" category, including: (a) the three patents IV had already asserted against the Intelligent Edge Aruba products in pending lawsuits (shaded in green); (b) the five DJ Patents; and (c) 29 other patents that were allegedly "relevant" to HPE's Intelligent Edge Aruba products.  *Id.*  Thus, IV expressly identified the DJ Patents (annotated by HPE with red boxes, below) alongside patents that IV had already asserted against HPE (highlighted green in IV's original presentation):



D.I. 2, Ex. 7 at 12 (slide excerpt; red annotations added).

Furthermore, on slide 14, IV separated its patents out by purported functionality. *See* D.I. 2, Ex. 7 at 14. On that slide, IV identified four of the five DJ Patents as relating to Wi-Fi functionality, including the '504 patent (under "Wi-Fi WPA3 Easy Connect"), the '757 and '036 patents (under "Mesh Wi-Fi"), and the '318 patent (under "Wi-Fi 802.11e/z"). *Id.* Reading slides 12 and 14 together, IV not only told HPE that the DJ Patents were allegedly infringed by HPE's Intelligent Edge Aruba products, but also that those HPE products allegedly infringe because they use certain features of Wi-Fi technology.

While ignoring these portions of its own presentation, IV repeatedly claims in its motion that it did not "make a direct accusation of infringement" of the DJ Patents (or any other patent). D.I. 19 at 2, 3, 10. For at least two reasons, IV is wrong.

<u>First</u>, IV is wrong because it ignores the language in the April 2022 presentation that expressly accuses HPE of infringement. *See* D.I. 2, Ex. 7 at 12 (stating that "HPE may <u>infringe additional patents</u>" beyond those identified on slide 12) (emphasis added). IV therefore expressly equated the group of 80 "relevant" patents with additional patents that "HPE may infringe." And IV identified the DJ Patents alongside patents it had already asserted against HPE, grouping all of them together as "relevant" to HPE's Intelligent Edge Aruba products— again making clear what IV meant by "relevant." It was a direct accusation of infringement.

Even if IV had not used the word "infringe" in its April 2022 presentation, that presentation alone would still support the Court's exercise of jurisdiction. This is because the Federal Circuit has made clear that "a declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids the magic words such as 'litigation' or 'infringement.'" *Hewlett-Packard*, 587 F.3d at 1362. In *Hewlett-Packard*, the Federal Circuit

was faced with language almost identical to the language IV used in April 2022 presentation; that is, a letter from the defendant "call[ing] … attention to" its patents as "relevant" to the plaintiff's products. *Id*. Like IV here, the defendant in that case argued that assertions of mere "relevance" did not amount to an actual controversy. The Federal Circuit disagreed, concluding that claims of patents being "relevant" to another company's products can give rise to declaratory judgment jurisdiction. *Id*. at 1363. The court reasoned that "it is implausible (especially after *MedImmune* and several post *MedImmune* decisions from this court) to expect that a competent lawyer drafting such correspondence for a patent owner would identify specific claims, present claim charts, and explicitly allege infringement." *Id.* at 1362; *accord Draeger Med. Sys., Inc. v. My Health, Inc.*, No. 15-248-SLR, 2016 WL 859282, at *2 (D. Del. Mar. 3, 2016). The Federal Circuit also observed that when a sophisticated licensing entity such as IV identifies patents as "relevant" to HPE product groups, that sort of "correspondence from a non-competitor patent holding company … may invoke a different reaction than would a meet-and-discuss inquiry by a competitor …." *Hewlett–Packard*, 587 F.3d at 1363. Thus, it was objectively reasonable for HPE to interpret IV's communications as either explicitly or implicitly asserting the patents identified on slide 12. *Id.* (implicit threats of litigation from experienced licensing entity were sufficient to give rise to declaratory judgment jurisdiction).

Second, IV's heavy reliance on a district court decision from Arizona is misplaced, and that decision actually supports the exercise of jurisdiction here. *See* D.I. 19 at 7-9 (citing *GoDaddy v. RPost Commc'ns Ltd.*, No. CV-14-126, 2014 WL 6908520, at *5 (D. Ariz. Dec. 9, 2014), *aff'd*, 685 F. App'x 992 (Fed. Cir. 2017)). In *GoDaddy*, the defendant RPost sent GoDaddy several written communications, including: (1) a letter listing numerous patents for GoDaddy to "review," with "no specific attention drawn to any of them"; (2) claim charts

13

attached to the letter, covering a subset of patents "explicitly asserted" against GoDaddy; and (3) a PowerPoint presentation sent one month later with a slide titled "Additional Recommended Review" that contained a list of five patents, including one of the patents for which RPost had previously provided a claim chart.  2014 WL 6908520, at *1-2.

The court found no justiciable controversy over the patents that were merely listed among numerous other patents in RPost's letter to GoDaddy "without more."  *Id.* at *5.  But the court reached a different result with respect to the five patents identified in RPost's subsequent presentation.  *Id.*  The court reasoned that RPost's act of "listing the [declaratory judgment patent] alongside one of the [explicitly asserted patents] reasonably indicates to GoDaddy that RPost also intended to assert the [declaratory judgment patent]."  *Id.*  Thus, *GoDaddy* supports the Court's exercise of jurisdiction in this case.  Like RPost, IV singled out the DJ Patents among a group of other "relevant" patents, including three patents that IV had already asserted against HPE.  D.I. 2, Ex. 7 at 12.  And unlike GoDaddy, HPE is not seeking declaratory judgment for any of the "more than three-hundred patents" that IV identified as "benefi[cial]" to HPE, without more.  *See* D.I. 19 at 2 (citing D.I. 2, Ex. 7 at 14).

Ignoring the actual facts, IV argues that because there was no "correspondence, communications, presentations, or *anything* singling out the DJ Patents," there can be no actual controversy.  D.I. 19 at 6-7 (emphasis in original).  But IV did single out 80 patents as "relevant" to HPE's products, and further singled out 37 patents—including the DJ Patents—as relevant to HPE's Intelligent Edge Aruba products.  *See* D.I. 2, Ex. 7 at 12-13; D.I. 19 at 6-7.  To the extent IV is claiming that HPE was required to bring a declaratory judgment action on all 34 of the as-yet-unasserted patents listed on the left side of slide 12 of IV's April 2022 presentation, that

14

argument is meritless.  In fact, *GoDaddy* recognizes that when a patentee's licensing demand covers multiple patents, a DJ plaintiff may select the patents on which to seek declaratory relief:

> RPost's listing of the patents on the title page of the Presentation, in conjunction with other factors, may establish subject-matter jurisdiction for all such patents.  <u>GoDaddy is free to choose which patents to litigate</u>, as long as GoDaddy can establish that a justiciable controversy exists over each patent at issue.

2014 WL 6908520, at *6 (emphasis added); *see also Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) (A plaintiff need only show that "a favorable decision will relieve a discrete injury to him," not that it would "relieve his every injury.").

Finally, *GoDaddy* rejected another argument IV makes here—namely "that because GoDaddy did not assert noninfringement and invalidity claims for the other [] patents listed on the title page of the Presentation, that indicates that there is no controversy over the [asserted declaratory judgment patent]."  2014 WL 6908520, at *6.  To the contrary, *GoDaddy* found that listing the declaratory judgment patent in a presentation alongside an asserted patent "reasonably indicate[d] to GoDaddy that RPost also intended to assert the [declaratory judgment patent] … which weighs in favor of finding subject-matter jurisdiction."  *Id.* at *5.  The same is true here.

IV also is incorrect that an exchange of claim charts is a prerequisite for declaratory judgment jurisdiction.  *See* D.I. 19 at 6.  Indeed, *GoDaddy* holds that "claim charts are not necessary to find a justiciable controversy in a declaratory judgment action for patent noninfringement … as long as the other circumstances in the case sufficiently establish a concrete controversy between the parties."  2014 WL 6908520 at *5; *see also Hewlett-Packard*, 587 F.3d at 1364 (finding jurisdiction over declaratory judgment claim even though the defendant never sent claim charts to the plaintiff).  The other out-of-district cases IV cites do not help its cause either, because they found jurisdiction to be lacking for factually dissimilar

reasons. *See DeCurtis LLC v. Carnival Corp.*, No. 20-22945-CIV, 2021 WL 7539904, at *9 (S.D. Fla. Feb. 9, 2021), *report and recommendation adopted as modified*, No. 20-21547-CIV, 2021 WL 1540518 (S.D. Fla. Apr. 20, 2021) (contrasting a letter that referenced an entire patent portfolio with a letter identifying specific patents in reference to a specific product line); *In re Qualcomm Litig.*, No. 17-cv-00108-GPC-MDD, 2017 WL 5985598, at *17-18 (S.D. Cal. Nov. 8, 2017) (finding no case or controversy as to certain patents that were listed in a patent owner's 1,975 page letter along with over 1,000 other patents); *Cepheid v. Roche Molecular Sys., Inc.*, No. C-12-4411 EMC, 2013 WL 184125, at *1011 (N.D. Cal. Jan. 17, 2013) (finding no case or controversy as to patent listed in patent owner's letter, because the letter did not identify the allegedly infringing products, and because the patent owner demonstrated it was not prepared to file suit on that patent); *Samsung Elecs. Co. v. Texas Instruments Inc.*, No.3:96-cv-0001-P, 1996 WL 343330, at *1, 6 (N.D. Tex. Apr. 18, 1996) (finding the plaintiff did not have standing over any of the 4,000 patents identified during license negotiations, but that a case or controversy existed as to the "defined group of forty-six patents" the patent owner asserted were infringed by plaintiff).

### 3. The April 2022 Presentation Implicates Products Already Accused Of Infringement By IV In Other Pending Lawsuits.

This Court also has jurisdiction over the DJ Patents because IV identified those patents as "relevant" to a product line that IV had already accused of infringing other patents. *See Arkema Inc.*, 706 F.3d at 1358 ("It [is] well established that a sufficient controversy exist[s] for declaratory judgment jurisdiction where the patentee had accused the declaratory judgment plaintiff of misappropriating the same technology in related litigation."). The April 2022 presentation identifies HPE's Intelligent Edge Aruba products as relevant to a specific group of IV patents, including the DJ Patents. *See* D.I. 2, Ex. 7 at 7, 14. And as demonstrated above, IV

accused HPE's Intelligent Edge Aruba products in IV's very first lawsuit against HPE, Case No. 6:21-cv-226-ADA (W.D. Tex.). *See* D.I. 2, ¶ 16. Specifically, in the first of its four lawsuits against HPE, IV accused the following products, among others: (1) SilverPeak Unity EdgeConnect SD-WAN Edge Platform; (2) Aruba EdgeConnect Platform; (3) ArubaOS; (4) Aruba 7200 Series Mobility Controllers; and (5) Aruba 802.11ax, 530 Series, and 550 Series Access Points. *See supra* at 2-3. Of those accused products, the Aruba 7200 Series Mobility Controllers and the Aruba 530 and 550 Series Access Points are directly at issue in this case. Further, IV expressly told HPE in April 2022 that the already-accused products would "soon stand accused under more IV patents." D.I. 2, Ex. 7 at 7; *see also id.* at 8.

In sum, the overlap between the Aruba products at issue in this case—for which IV expressly threatened infringement of the DJ Patents in April 2022—and the Aruba products that IV accuses of infringement in its first lawsuit against HPE, strongly supports the exercise of declaratory judgment jurisdiction here.

## B. Under The Second Prong Of The *Molecular Pathology* Test, HPE's "Potentially Infringing" Products Are Already On The Market.

HPE indisputably satisfies the "reality" and "immediacy" requirements in the second prong of the *Molecular Pathology* test. There is no question that the HPE Aruba products at issue in this case are currently sold in the United States. *See* D.I. 2, Ex. 7 at 7. Thus, HPE is already conducting "potentially infringing activity." *See Cat Tech*, 528 F.3d at 881. IV does not address this prong in its motion and does not dispute that the identified Aruba products are implicated by the DJ Patents. IV has waived any argument to the contrary. The second jurisdictional prong therefore is satisfied.

17

**C.    The Court Should Exercise Its Discretion To Retain Jurisdiction Under The Declaratory Judgment Act.**

Finally, the Court's exercise of jurisdiction in this case will serve the purposes of the Declaratory Judgment Act.  HPE has devoted significant time, money, and resources into developing its core products, including the Intelligent Edge Aruba products.  *See* D.I. 2, ¶ 1; *see also id.*, Ex. 7 at 7.  It is these very products, among others identified by IV, that IV threatened "will soon stand accused under IV patents."  D.I. 2, Ex. 7 at 7.  Absent a declaratory judgment of noninfringement, HPE "will be forced to 'bet the farm' by making the '*in terrorem*' choice between a growing potential liability to [Defendants] and abandoning its [core technology]."  *Cat Tech*, 528 F.3d at 883 (finding the district court properly exercised its discretion to maintain jurisdiction).

When a court finds that jurisdiction exists over the claim for declaratory relief, "in the usual circumstance the declaratory judgment is not subject to dismissal."  *Capo, Inc. v. Dioptics Med. Prods.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004) (quoting *Genentech, Inc.*, 998 F.2d at 937).  IV does not articulate any reasonable basis for this Court to take the unusual step of exercising its discretion to decline declaratory judgment jurisdiction.

IV first argues that litigating the "DJ Patents would serve little purpose" because IV never substantively discussed those patents with HPE.  D.I. 19 at 10.  That argument, however, simply repackages IV's meritless arguments on the first prong of the *Molecular Pathology* test.  *See Hewlett-Packard*, 587 F.3d at 1362, 1364 (finding jurisdiction over declaratory judgment claim even though defendant never sent claim charts to the plaintiff).  Indeed, "[i]t is irrelevant whether [IV] had conducted an adequate investigation or whether it subjectively believed [HPE] was infringing" the DJ Patents, because "the test for declaratory judgment jurisdiction in patent cases… is objective."  *Id.* at 1363 (internal quotation marks and citations omitted).

18

IV next argues that dismissal will promote judicial efficiency, but IV cites inapposite authority. *See* D.I. 19 at 10-11 (citing *Serco Servs. Co., L.P. v. Kelley Co.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995)). In *Serco Services*, the district court declined to exercise jurisdiction over a first-filed declaratory judgment suit in favor of a second-filed infringement suit involving the same parties and the same patent, and the Federal Circuit affirmed. 51 F.3d at 1039-40. Avoiding parallel litigation is certainly one circumstance that may lead a court to decline jurisdiction, but it does not exist here.

Finally, IV's assertion that HPE is somehow abusing litigation as a tool to obtain a more favorable bargaining position is the height of hypocrisy coming from IV, which now has sued HPE <u>four times</u> since the beginning of 2021. The Court should summarily reject IV's arguments on discretionary denial.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny IV's motion to dismiss in its entirety. If the Court is inclined to afford IV any relief on this motion, the Court should afford HPE leave to amend its complaint.

Dated: September 7, 2022

Respectfully submitted,

Sean Cunningham (admitted *Pro Hac Vice*)
Erin P. Gibson (admitted *Pro Hac Vice*)
Tiffany Miller (admitted *Pro Hac Vice*)
**DLA PIPER LLP (US)**
401 B Street Suite 1700
San Diego, California 92101-4297
Telephone: (619) 699-2700
Facsimile: (619) 699-2701
sean.cunningham@us.dlapiper.com
tiffany.miller@us.dlapiper.com
david.knudson@us.dlapiper.com

**DLA PIPER LLP (US)**

*/s/ Brian A. Biggs*
Brian A. Biggs (Bar No. 5591)
Angela C. Whitesell (Bar No. 5547)
1201 North Market Street, Suite 2100
Wilmington, DE 19801-1147
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
brian.biggs@us.dlapiper.com
angela.whitesell@us.dlapiper.com

*Attorneys for Plaintiff*

Helena Kiepura
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
Tel: (202) 799-4000
helena.kiepura@dlapiper.com

Brent Yamashita (admitted *Pro Hac Vice)*
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, California 93202-2214
Telephone: (650) 833-2000
Facsimile: (650) 833-2001
brent.yamashita@us.dlapiper.com

Dawn Jenkins (admitted *Pro Hac Vice)*
**DLA PIPER LLP (US)**
845 Texas Avenue, Suite 3800
Houston, Texas 77002
Telephone: (713) 425-8400
Facsimile: (713) 425-8401
dawn.jenkins@dlapiper.com

Nancy C. Braman (admitted *Pro Hac Vice)*
**DLA PIPER LLP (US)**
33 Arch Street, Floor 26
Boston, MA 02110-1447
Telephone: (617) 406-6001
Facsimile: (617) 406-6101
nancy.braman@us.dlapiper.com

WEST/299765660

## <u>CERTIFICATE OF SERVICE</u>

I, Brian A. Biggs, hereby certify that on this 7th day of September, 2022, a copy of

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**PLAINTIFF'S COMPLAINT** was served upon the following counsel of record via electronic

mail:

Brian E. Farnan
Michael J. Farnan
**FARNAN LLP**
919 N. Market Street
12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Matthew D. Vella
Robert R. Gilman
Jonathan DeBlois
Aaron Jacobs
**PRINCE LOBEL TYE LLP**
One International Place
Suite 3700
Boston, MA 02110
Telephone: (617) 456-8000
mvella@princelobel.com
rgilman@princelobel.com
jdeblois@princelobel.com
ajacobs@princelobel.com

*/s/ Brian A. Biggs*
Brian A. Biggs (DE Bar No. 5591)