# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HEWLETT PACKARD ENTERPRISE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 22-730-GBW-CJB |
| INTELLECTUAL VENTURES I LLC, and XENOGENIC DEVELOPMENT LIMITED LIABILITY COMPANY, | ) ) ) ) | |
| Defendants. | ) ) | |

Brian A. Biggs and Angela C. Whitesell, DLA PIPER LLP, Wilmington, DE; Sean Cunningham, Erin P. Gibson, and Tiffany Miller, DLA PIPER LLP, San Diego, CA; Helena Kiepura, DLA PIPER LLP, Washington, DC; Brent Yamashita, DLA PIPER LLP, East Palo Alto, CA; Dawn Jenkins, DLA PIPER LLP, Houston, TX; and Nancy C. Braman, DLA PIPER LLP, Boston, MA, Attorneys for Plaintiff.

Brian E. Farnan and Michael J. Farnan, FARNAN LLP, Wilmington, DE; Matthew D. Vella, Robert R. Gilman and Aaron Jacobs, PRINCE LOBEL TYE LLP, Boston, MA, Attorneys for Defendants.

## MEMORANDUM OPINION AND ORDER

December 2, 2022
Wilmington, Delaware

*Christopher J. Burke*
**CHRISTOPHER J. BURKE, United States Magistrate Judge**

As announced at the hearing on October 24, 2022, IT IS HEREBY ORDERED that

Defendants Intellectual Ventures I LLC and Xenogenic Development Limited Liability

Company's motion to dismiss for lack of subject matter jurisdiction or, in the alternative, for the

Court to decline to exercise its declaratory judgment jurisdiction (the "motion"), (D.I. 18), is

DENIED.

Defendants' motion was fully briefed as of September 14, 2022.  (D.I. 27)  The Court

carefully reviewed all submissions in connection with the motion, heard oral argument, and

applied the relevant legal standard for review of this type of motion to dismiss.  The instant

Memorandum Opinion and Order is consistent with the bench ruling announced at the October

24 hearing, pertinent excerpts of which follow:

> [T]his case, as the parties know, is *Hewlett Packard Enterprise Company v[.] Intellectual Ventures I, LLC, et al*, [C]ivil [A]ction [No.] 22-730-GBW-[CJB].  With its [C]omplaint in the case, [] [P]laintiff[] Hewlett Packard Enterprise Company, which I[ wi]ll refer to as ["P]laintiff["] or ["]HPE,["] seeks a declaratory judgment of non-infringement as to each of the five patents[-]in[-]suit.
>
> At issue before me now is [D]efendant[s] Intellectual Ventures I, LLC, or ["]IV,["] and Xenogenic Development Limited Liability Company['s] motion to dismiss for lack of subject matter jurisdiction.
>
> The parties consented to the Court's jurisdiction to resolve this motion[,][1] and for reasons the Court will discuss now, I[ a]m going to order that the motion be denied. . . .
>
> First, as I begin, let me set out the legal standards that apply to a motion to dismiss of this type.  The motion is brought [] pursuant [to] [Federal R]ule of [C]ivil [P]rocedure 12(b)(1).  Under that [R]ule[,] the Court's jurisdiction may be challenged either facially[—]that is[,] based on the legal sufficiency of the claim[—]

---
[1]     (D.I. 25)

or factually[—]that is[,] based on the sufficiency of jurisdictional fact.[2]  Here[,] the parties agree that [D]efendant[s'] attack is a facial challenge because it focuses on the purported insufficiency of the allegations in [P]laintiff's [C]omplaint.[3]  As a result, all the facts that the Court will reference herein are either drawn from the [C]omplaint itself or from documents attached to the [C]omplaint or integral thereto.

The Court has subject matter jurisdiction under the Declaratory Judgment Act if the facts alleged under all the circumstances show that there[ i]s a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.[4]

In patent cases, declaratory judgment jurisdiction exists where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party and where that party contends that it has the right to engage in the accused activity without license.[5]

In light of this, the United States Court of Appeals for the [F]ederal [C]ircuit, whose law applies here,[6] has held that in declaratory judgment actions for non-infringement a plaintiff must show two things[:]  first, an affirmative act by the patentee related to the enforcement of his patent rights; and second, meaningful preparation to conduct potentially infringing activity.[7]

The second prong of that test, th[e] ["]meaningful preparation["] prong, is satisfied when a party has already engaged in the actual

---

[2]      *TSMC Tech., Inc. v. Zond, LLC*, Civil Action No. 14-721-LPS-CJB, 2014 WL 7498398, at *2 (D. Del. Jan. 8, 2014).

[3]      (D.I. 19 at 3; D.I. 22 at 7)

[4]      *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1361 (Fed. Cir. 2009).

[5]      *Id*.

[6]      *See MedImmune, Inc. v. Centocor, Inc*., 409 F.3d 1376, 1378 (Fed. Cir. 2005), *overruled on other grounds*, *MedImmune, Inc. v. Centocor, Inc.*, 549 U.S. 1163 (2007).

[7]      *Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office*, 689 F.3d 1303, 1318 (Fed. Cir. 2012); *see also Microsoft Corp. v. SynKloud Techs. LLC*, 484 F. Supp. 3d 171, 177 (D. Del. 2020) (hereinafter "*Microsoft*").

manufacture or sale of the potentially infringing product or when the party has meaningfully prepared to produce a potentially infringing product.[8]

In this case[,] the parties agree that this ["]meaningful preparation["] prong is not at issue as to this motion since [P]laintiff's HP Intelligent Edge Aruba products [at issue] in the [C]omplaint have been and are currently sold in the United States.[9]

What is at issue, however, is the first ["]affirmative act["] prong of the test. The Court will take up this prong in more detail in just a few moments. Before it does, though, the Court also notes that the decision as to whether a case or controversy exists in the context of a patent declaratory judgment claim will necessarily be a fact[-]specific one[; i]t must be made in consideration of all relevant circumstances.[10] And the burden[ i]s on the party asserting the declaratory judgment jurisdiction, here [Plaintiff], to establish that an Article [III] case or controversy existed at the time that the claim was filed and that it has continued since.[11]

With the relevan[t] law set out[,] let me turn to the merits. And here, as the Court has already noted, it will conclude that [] [P]laintiff has demonstrated that [D]efendants have taken affirmative acts related to enforcement of their patent rights sufficient to create an actual controversy between the parties regarding infringement of the five patents[-]in[-]suit.

Now, let me explain why the Court believes this to be so. The [F]ederal [C]ircuit has made reference to several factors that courts should consider in determining whether the patentee in a situation like this has sufficiently put at issue the requisite affirmative acts. Here, many of those factors apply, counseling in favor of denial of the motion.

First, the [F]ederal [C]ircuit[ has] noted that a patentee's[ "]aggressive enforcement strategy, even in the absence of direct

---

[8]     *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 881 (Fed. Cir. 2008).

[9]     (D.I. 22 at 17)

[10]    *Intel Corp. v. Future Link Sys., LLC,* Civil Action No. 14-377-LPS, 2015 WL 649294, at *4 (D. Del. Feb. 12, 2015) (citing cases).

[11]    *Id.* (citing cases).

threats against the declaratory [judgment] plaintiff, may support jurisdiction[."][12]

The record shows that [D]efendant[] IV, does, in fact, have an aggressive strategy of enforcing the many patents that they own, a strategy that IV made sure [P]laintiff was aware of before the instant suit.  In paragraph 13 of the [C]omplaint and on pages 5 and 17 of the presentation[] that IV made to [P]laintiff in April 2022, two months before [P]laintiff sued here, IV's strategy is described.  In the April 2022 presentation, which I[ wi]ll refer to herein simply as ["]the presentation[,"] IV explained that its business model involved investing billions of dollars to acquire tens of thousands of patents, which in turn has generated IV billions of dollars in licensing revenue.[13]  In that presentation, IV also noted that it had filed over 130 court cases to date against more than 70 companies and it had generated over one billion in licensing revenue through litigation, including litigation against ["]15 of HPE's top 20 competitors.["][14]

In other words, as a general matter, IV made sure that [P]laintiff knew just a short time before this case was filed that first, IV was the type of entity that had sued parties just like [P]laintiff in the past; second, that its business model was focused on doing so; and third, that this business model had successfully brought IV significant revenue due to settlements paid in federal patent litigation.

Second, and relatedly, the [F]ederal [C]ircuit has explained that ["]prior litigious conduct["] is another circumstance to be considered in assessing whether the totality of circumstances created an actual controversy.[15]

Now, to be sure, the [F]ederal [C]ircuit has cautioned that simply because a patentee may have, for example, filed one lawsuit concerning different products covered by unrelated patents against an accused infringer, that[ i]s not the type of a pattern of conduct

---

[12]     *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 906 (Fed. Cir. 2014) (hereinafter "*DataTern*").

[13]     (D.I. 2 at ¶ 13; *id.*, ex. 7 at 17)

[14]     (*Id.*, ex. 7 at 5)

[15]     *Prasco LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008).

that itself could create declaratory judgment jurisdiction as to any patent in the patentee's portfolio. [16]

But here[,] IV's prior conduct against [P]laintiff amounted to much more than that.  For example, as set out in the [C]omplaint[,] in 2021, IV sued [P]laintiff three different times in the United States District Court in the Western District of Texas[,] or the ["W]estern [D]istrict.["] [17]  It sued [] [P]laintiff for patent infringement in those three cases[,] asserting a total of 12 different patents. [18]  First, in March of 2021, IV sued [P]laintiff on seven patents in the [W]estern [D]istrict. [19]  Importantly[,] among the products at issue in that case are [P]laintiff's Intelligen[t] Edge products. [20]  In June 2021, IV filed a second suit against [P]laintiff in the [W]estern [D]istrict asserting four additional patents[,] and in December of 2021, IV filed a third suit against [P]laintiff in the [W]estern [D]istrict, again asserting an additional patent. [21]

Moreover, according to the [C]omplaint, in a March 2022 telephone call, IV stated that it would continue to sue [P]laintiff on other patents in IV's portfolio. [22]

So, to recap, by early 2022, [P]laintiff had seen IV file suit against it for patent infringement three different times and those suits had kept coming[,] one every few months.  Simply from looking at this pattern of prior litigation, [P]laintiff might have reasonably thought that absent some agreement between the parties[,] another IV suit against it was coming right around the corner.

As a side note, after the instant suit here was filed by [P]laintiff in early [ ] June of 202[2], IV went on to file suit against [P]laintiff two more times.  Four weeks after the instant suit was filed in late June of 2022, IV sued [P]laintiff again in the [W]estern [D]istrict

---

[16]   *Id.*

[17]   (D.I. 2 at ¶¶ 15-18 & ex. 6)

[18]   (*Id.* at ¶¶ 15-18)

[19]   (*Id.* at ¶ 16)

[20]   (*Id.*)

[21]   (*Id.* at ¶¶ 17-18)

[22]   (*Id.* at ¶ 25)

asserting two more patents.[23]  And then in October of 2022, IV sued [P]laintiff in this [C]ourt, alleging infringement of three additional patents, again accusing [P]laintiff's Intelligent Edge products, which are also at issue in the instant suit.[24]

Of course[,] subject matter jurisdiction is assessed at the date of the filing of the complaint at issue,[25] which here [wa]s filed on June 2[], 2022,[26] before these two additional post[-C]omplaint suits were initiated[.]  [S]o the [C]ourt will not rely on these post[-C]omplaint facts in order to conclude that there[ i]s subject matter jurisdiction here[.]  [B]ut certainly these post[-C]omplaint facts do[ no]t suggest that after the [C]omplaint's filing[, D]efendants began taking steps that might be said to de[-]escalate the fear of continuing litigation against [P]laintiff.  Instead, it[ i]s worth noting that [IV] did the opposite.

Third, the [F]ederal [C]ircuit has explained that the presence of any accusations of infringement or threats of suit is a relevant factor to the question of whether subject matter jurisdiction exists.[27]  And here, as set out in [ P]laintiff's [C]omplaint,[28] in the Court's view, the content of IV's April 2022 presentation did amount to an explicit threat to sue [P]laintiff on the patents[-]in[-]suit as to, at a minimum, [P]laintiff's Intelligent Edge product line, including its Aruba products.  This presentation, at a minimum, amounted to an implicit threat, but again[,] the Court believes it also was an explicit threat to sue in this regard.

For instance, the presentation states that [P]laintiff's revenue relies on core technologies that ["]significantly overlap["] with IV's patent portfolio and that IV ["]continues mining and claim charting more assets with respect to["] HPE's products.[29]  The presentation specifically called out [] [P]laintiff's Aruba offerings as one of

---

[23]   (D.I. 22 at 1)

[24]   (D.I. 33)

[25]   *DataTern*, 755 F.3d at 906.

[26]   (D.I. 2)

[27]   *Prasco*, 537 F.3d at 1339; *see also Microsoft*, 484 F. Supp. 3d at 178.

[28]   (D.I. 2 at ¶ 25)

[29]   (*Id.*, ex. 7 at 15)

those very product lines that [P]laintiff was currently claim charting against. [30]  In the presentation[,] IV also asserted that ["a]ll major HP[E] products and services shall soon stand accused under IV patents["] and that ["a]lready[-]accused products and services shall soon stand accused under more IV patents.["] [31] So[,] even simply looking at these [portions] of the presentation as I just described, [P]laintiff[] could reasonably infer that IV was telling it that first, IV believed that more of [P]laintiff's products infringed IV's patents; second, IV was actively preparing to sue [P]laintiff in the future on such products; and third, [P]laintiff's Aruba offerings were one of the product lines as to which [P]laintiff could expect to be sued.

But the presentation went further.  On page 12 of the presentation, as [P]laintiff has noted, IV included a graphic that listed what it felt was the ["c]urrent [p]icture["] as to which of its patents were ["]relevant to HPE.["] [32]  11 of the approximately 80 patents that were listed on that slide were patents that IV had already sued [P]laintiff on. [33]  Those 80 patents were broken up into whether they were relevant to HPE's Intelligent Edge product line, which includes the Aruba Intelligent Edge products at issue in this case[,] or certain other product lines. [34]  And on the part of the slide relating to HPE's Intelligent Edge products[,] there were 37 patents[,] including three that IV had previously sued [P]laintiff on in the [W]estern [D]istrict. [35]  At the bottom of the slide, IV stated ["]IV continues mining the portfolio for relevant assets[;] HPE may infringe additional patents which span all segments, incl[.] [Compute], HPC, [S]torage and Edge [U]nits.["] [36]

The Court agrees with [P]laintiff that this language on slide 12 amounted to an explicit statement that IV believed that all of the

---

[30]   (*Id.*)

[31]   (*Id.* at 7)

[32]   (*Id.* at 12)

[33]   (*Id.*)

[34]   (*Id.*)

[35]   (*Id.*)

[36]   (*Id.*)

relevant patents listed on the slide were being infringed by HPE. [37] It disagrees with [Defendants'] suggestion that this was an ambiguous statement in that regard.  There[ i]s no other way to read that part of slide 12[,] in which IV was saying that HPE may infringe *additional* patents other than the ones at issue on the slide[,] than as a statement that IV believed HPE *did*, in fact, infringe all the patents that were listed on that slide.

So when you put all this together, it[ i]s clear that with the slide on page 12 of its presentation IV was telling [] [P]laintiff, first, this is a list of patents that your referenced products infringe; second, that we[ ha]ve already sued you on some of these patents; and third, you can expect that we will sue you on any or all of the other patents listed here in the future if a resolution is not reached and particularly as to the Intelligent Edge products at issue in this case. On that slide, [P]laintiff was given a core list of 34 remaining [Intelligent Edge] patents on which it might expect to be sued[, including the patents-in-suit].

In the briefing[,] [D]efendants brushed these statements off by saying IV had ["]not once presented even a single claim chart to HPE regarding the DJ patents[,] let alone made a direct accusation of infringement.["] [38]  But in *Hewlett[-]Packard Co[.] v[.] A[c]celeron LLC*, the [F]ederal [C]ircuit explicitly rejected this exact argument, stating that ["]it[ i]s implausible [. . .] to expect that a competent lawyer drafting such correspondence for a patent owner would identify specific claims, present claim charts[,] and explicitly allege infringement.["] [39]  So certainly presentation of claim charts as to a patent [is] not required before subject matter jurisdiction can attach.

And here, as the Court set out[,] in its view, IV did make an explicit threat of [suit] on page 12 of that presentation or at the very least an implicit threat as to the patents[-]in[-]suit on the Intelligent Edge products at issue here.

Now, the Court [ha]s previously noted[,] and it emphasizes here again, [that] subject matter jurisdiction questions like this one have to be assessed on a case-by-case basis[,] taking into account all

---

[37]    *See Hewlett-Packard*, 587 F.3d at 1363.

[38]    (D.I. 19 at 2; *see also id*. at 6)

[39]    587 F.3d at 1362.

relevant facts.  If only some but not all the facts that the Court has now set out, that is, the facts regarding IV's aggressive enforcement strategy generally or its history of suing [P]laintiff particularly, including as to the products at issue here[,] or the tenor of the assertions it made in the presentation[—]if only some but not all of those facts had been present, then perhaps the decision here might be different.  For example, imagine a world where the only pre-suit act IV had taken were to have simply sent [P]laintiff[] a listing of the patents in its portfolio like the listing on page 14 of the April 2022 presentation and [that it] simply had asked [P]laintiff to review those patents and consider whether it wishes to take a portfolio license.  If that were the factual record here, then the outcome of the motion might well have been different.  But the Court has to take into account *all* of the above[-]referenced facts that were at issue here as described in the [C]omplaint.  And in doing so, those facts show that IV was, in fact, taking affirmative acts to show [] [P]laintiff that IV intended to enforce its rights to the patents[-]in[-]suit sufficient to create an actual controversy between the parties.

Before the Court concludes, it also takes a moment to distinguish a case that [D]efendants relied upon most heavily in their briefing[:] *GoDaddy.com v[.] RPost Communications, Limited*, a case from the United States [D]istrict [C]ourt for the District of Arizona that was issued . . . in December of 20[14].[40]  The Court agrees with [P]laintiff that this case hurts rather than helps [D]efendant[s'] position.  In *GoDaddy.com* two of the patents[-]in[-]suit were defendant's '219 Patent and its '334 Patent.[41]  The *GoDaddy.com* [C]ourt found that there was subject matter jurisdiction over suit as to the '219 Patent, but not as to the '334 Patent.[42]  Defendants here wrongfully analogize the patents[-]in[-]suit in this case to that '334 patent in *GoDaddy.com* when, in fact, in the Court's view, the five patents here are more like the '219 Patent that was at issue in that case.

In *GoDaddy.com*, defendant, who [wa]s the patentee, had sent plaintiff a presentation entitled ["S]ummary of [P]reliminary [I]nfringement [A]nalysis.["][43]  It listed the '219 Patent as one of

---

[40]   No. CV-14-00126-PHX-JAT, 2014 WL 6908520 (D. Ariz. Dec. 9, 2014).

[41]   *Id.* at *1.

[42]   *Id.* at *6, *8.

[43]   *Id.* at *2.

five patents for which ["A]dditional [R]ecommended [R]eview["] was needed.[] [44]  Among the other four patents on that five-patent list was one that defendant had already expressly asserted against plaintiff. [45]  The *GoDaddy.com* [C]ourt found that by listing the '219 Patent alongside a previously asserted patent, this reasonably indicated to plaintiff that defendant also intended to assert the '219 Patent against it. [46]  And so the Court concluded that subject matter jurisdiction existed as to the '219 Patent. [47]

Here, in its April 2022 presentation, IV listed the five patents[-]in[-]suit alongside three other patents relevant to HPE's Intelligent Edge product line that IV had already sued [P]laintiff on.  At the bottom of that slide, as the [] Court has noted, IV told HPE that [it] believed that HPE infringed those five patents[-]in[-]suit.

So[,] in line with the reasoning of the *GoDaddy.com* [C]ourt, this listing of the five patents[-]in[-]suit here along with others that IV had previously sued on alone could have given [P]laintiff reason to believe that a case or controversy had been established as to those five patents.

Conversely, the *GoDaddy.com* [C]ourt concluded that there was no subject matter jurisdiction over the '334 Patent at issue in that case, but that was because this '334 Patent had only been listed along with numerous other of the defendant's patents in an e-mail and a letter to plaintiff ["]with no specific attention drawn to them.["] [48]

In the Court's view, the '334 Patent in *GoDaddy.com* might be said to be equivalent to an IV patent [that] was simply listed on page 14 of IV's April 2022 presentation, that is[,] the slide that simply included reference to over 300 patents that were in IV's portfolio along with the notation that ["]HPE can benefit from a portfolio-wide license.["] [49]

---

44      *Id.* at *5.

45      *Id.*

46      *Id.* at *6, *8.

47      *Id.*

48      *Id.* at *5.

49      (D.I. 2, ex. 7 at 14)

The decision in *GoDaddy.com* also rebuts another argument of [D]efendants here[—]that there[ i]s something wrong with the fact that [P]laintiff sued it . . . on only five of the 37 patents listed on page 12 of IV's presentation[.] [50]   In the Court's view, [P]laintiff could have rightly sued [D]efendants on any of those other patents listed in that grouping had it wished to do so. [51]   But as the *GoDaddy.com* [C]ourt explained, if there is subject matter jurisdiction as to a group of patents owned by the patentee[,] then a declaratory judgment plaintiff is ["]free to choose["] which patents of that group [to] litigate. [52]   Plaintiff rightly did that here as to the five patents[-]in[-]suit.

Finally, . . . the law says that even where a court concludes that there is a case or controversy under the Declaratory Judgment Act as to certain patents, the [c]ourt can still decline to hear the matter in its discretion. [53]   In deciding whether to entertain a declaratory judg[]ment request, the [c]ourt has to determine whether resolving the case serves the objectives for which the Declaratory Judgment Act was created. [54]   Here[,] it makes sense for the Court to exercise its discretion to permit this suit to proceed forward.   The [F]ederal [C]ircuit has explained that the Declaratory Judg[]ment Act was meant to allow a party like [P]laintiff to proceed with suit in a case like this in order to avoid the difficult choice of either seeing its liability to [D]efendants grow or otherwise having to abandon its offering of Intelligent Edge Aruba products. [55]

Moreover, for the reasons that [P]laintiff sets out on pages 18 to 19 of its answering brief, [56] [D]efendant[s'] arguments as to why the

---

[50]     (D.I. 19 at 6)

[51]     The Court also notes parenthetically that it[ i]s sensible that [P]laintiff only chose a small number of those patents on[] which to sue, [as] suing on all of those patents in that group would have created challenges for the Court and litigants and likely would have wasted resources.

[52]     2014 WL 6908520, at *6.

[53]     *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995); *see also Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1361-62 (Fed. Cir. 2020).

[54]     *Cat Tech*, 528 F.3d at 883.

[55]     *Id*.

[56]     (D.I. 22 at 18-19)

Court should not exercise jurisdiction here are not well taken.  And so for all of the above reasons, [D]efendant[s'] motion is denied.